[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On June 4th 1999 the defendant, Department of Transportation of the State of Connecticut, by eminent domain took property belonging to the plaintiff Bridgeport Tuck-It-Away Incorporated comprising of approximately 80,000 square feet for the purpose of laying out, altering, extending, widening, changing the grade and improving the highway commonly known as Interstate Route 95. Said property is described as follows: Said premises is located in the Town of Bridgeport, County of Fairfield and State of Connecticut, on the northerly side of Present Cherry Street and the easterly-side of Present Bostwick Avenue containing 43,841 square feet, more or less, bounded,
Southerly by Present Cherry Street, 220.1 feet, more or less; CT Page 12581
Westerly by Present Bostwick Avenue, 102 feet, more or less;
Northerly by land now or formerly of Anthony J. Ruscito Sr., 66.5 feet, more or less, as shown on said map;
Westerly by land now or formerly of Anthony J. Ruscito Sr., 33.5 feet, more or less, as shown on said map; northerly by land now or formerly by Anthony J. Ruscito Sr., 24.9 feet, more or less, as shown on said map;
Westerly by land now or formerly of Anthony J. Ruscito Sr., 24.1 feet, more or less, as shown on said map;
Northerly by land now or formerly of Anthony J. Ruscito Sr., 54.5 feet, more or less, as shown on said map;
Westerly by land now or formerly of Anthony J. Ruscito Sr., 21.4 feet, more or less, as shown on said map;
Southerly by land now or formerly of Anthony J. Ruscito Sr., 3.9 feet, more or less, as shown on said map;
Westerly by land now or formerly of Anthony J. Ruscito Sr., 127.6 feet, more or less, as shown on said map;
Northerly by land now or formerly of Anthony J. Ruscito Sr., 64.5 feet, more or less, as shown on said map;
Westerly by land now or formerly of Anthony J. Ruscito Sr, 93.4 feet, more or less, as shown on said map;
Northerly by Present Railroad Avenue South, 17 feet, more or less; easterly by land now or formerly of Casco Products Corp., 400.1 feet, more or less, as shown on said map.
As compensation for said taking, the defendant deposited $359,000.00 with the clerk's office in Superior Court, Fairfield County, at Bridgeport, which was later withdrawn by the plaintiff.
Said premises are more particularly delineated on a map entitled: "TOWN OF BRIDGEPORT MAP SHOWING LAND ACQUIRED FROM TUCK IT AWAY BRIDGEPORT, INC. BY THE STATE OF CONNECTICUT INTERSTATE RTE. 95 (LIMITED ACESS HIGHWAY) SCALE 1:250 OCTOBER 14, 1997 JAMES F. BYRNES, JR. P.E. TRANSPORTATION CHIEF ENGINEER-BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS". Sheet 1 of 1 (5-18-99). This is a Total Take.
Being the same premises acquired by Tuck-It-Away Bridgeport, Inc. as CT Page 12582 contained in a Warranty Deed dated March 16, 1983 and recorded in Volume 1687 at Page 991 of the Bridgeport Land Records, excepting therefrom a parcel of land described in a Warranty Deed dated December 23, 1983 and recorded in Volume 1710 at Page 923 of the Bridgeport Land Records.
Said premises are taken subject to easements and rights of record, especially a certain Agreement dated December 23, 1983 and recorded in Volume 1710 at Page 925 of said land records.
Testifying for the plaintiff was an appraiser, Eric Michel, who using both the sales comparison and capitalization of income approaches, found the fair market value of said property to be $950,000.00. He had inspected subject property on June the 1st 2000 after the same had been demolished. Testifying for the defendant was one, Norman Benedict, who using only the sales comparison approach found the fair market value to be $615,000.00. Mr. Benedict's comparable properties were located all over Connecticut, not a single one of which was in Bridgeport.
Also testifying for the defendant was appraiser Barbara Pape who using both the sales comparison and income approaches found the fair market value of subject property to be $425,000.00. Barbara Pape inspected the property on August 24, 1998, a year prior to the taking.
The Court confesses some difficulty in arriving at a fair market value because of the various deficiencies contained in the appraisers' testimony and reports. The Court is not enchanted with conducting an odyssey of claimed comparable properties in Connecticut, none of which is located in Bridgeport and some of which are forty to fifty miles from the subject property. Nor is the Court enamored in the capitalization of income approaches used by the appraisers who used the same, in view of the fact that their computations were based on market data not on actual income and expenses. All the appraisers who used the income approach indicated that no response was received from the owner of the property after inquiries as to the actual income and expenses.
Subject property consisted of five buildings, many of which were not appropriately maintained and contained significant deterioration. The Pape appraisal, which was conducted on an inspection one year prior to the taking, indicated that three of the roofs were recently repaired and at the time of the inspection, one of the roofs was actively leaking in addition to the drainage system for two of the buildings leaking into the stairwell of one of the buildings. Pape indicated that the overall building functional utility has to be considered somewhat less than average due to extensive deferred maintenance; fire damage in one of the buildings; abandonment of one of the buildings which contained peeling paint, debris, roof leakage, broken windows, and overall deterioration. CT Page 12583 Cost to cure would have been extensive and not considered feasible. Pape concluded that the subject property presented a cold storage facility with abandoned buildings, only 58 percent of which was functional and the balance abandoned. In addition, evidence of floor buckling was observed in two of the buildings. Extensive repairs to several of the buildings was also reported from the former owner.
Due to the fact that the Court has indicated it is not enamored with the capitalization of income approach, this leaves only the sales comparison approaches of Pape for the defendant and Michel for the plaintiff.
Taking up the plaintiff's use of the sales comparable approach, its appraiser Michel used six properties, namely, 500, 555 and 430 Bostwick Avenue, 459 Iranistan Avenue and 560 North Washington Avenue and 1730 State Street.
By making adjustments for time, age, location, condition, physical and functional characteristics, he was able to arrive at $12.00 per square foot for subject property, resulting in a fair market value, in his opinion, of $910,000.00.
The Court examined the Bostwick properties because of their proximity to the subject property. 500 and 555 Bostwick properties were pristine, excellent, fully functional, and occupied. 430 Bostwick Avenue didn't exist as was also the case with 560 North Washington Avenue.
In arriving at his price of $12.00 per square foot, Mishel considered the subject property average. In this respect his opinion conflicts with that of Pape, who found the subject property sixty percent functional. Of course, Pape saw the property ten months prior to the defendant's takeover. Michel never saw the property prior to demolition. The Court must give more weight to Pape's evaluation and this is born out by the photos.
The plaintiff has argued that Pape's examination occurred eight months prior to the taking. The Court does not consider this fatal with respect to an evaluation of fair market value at the time of the taking and as a matter of fact, the chances are that the condition of the property worsened in the interim. Nor does the Court consider the purchase price of $400,000.00 by Tuck-It-Away relevant to the present value.
Two further issues should be noted. The defendant introduced testimony by one Howard Hurd, a Connecticut licensed environmental professional, who assessed the subject property and found soil contamination. He estimated that remedial costs with respect to such contamination ran CT Page 12584 between a few hundred thousand dollars to a million. It is significant that Hurd did not discuss the nature of the pollutants.
The Court has in mind the recent case of NORTHEAST CT ECONOMIC ALLIANCE, INC. ET AL v. ATC PARTNERSHIP, ET AL, which held that evidence and testimony regarding environmental contamination and remediation costs were admissible with respect to the condemned property, whereas Hurd simply testified about pollutants without identifying them in this case.
The condemnor at the trial level of this case made an evidentiary offer of proof regarding the condition of the property at the time of taking, identifying the various substances, including asbestos, lead, polychlorinatid biphenyls, as well as petroleum contamination. The offer also stated that the plaintiffs would introduce evidence of the presence of lead containing materials like lead paint and the conditions of those materials. It further stated that the offer would include evidence that throughout the buildings there were tens of thousands of square feet of wall, ceiling, and floor space that had lead based and lead containing paint that crumbled, peeled, and otherwise deteriorated in many places. It went on to further state that such materials had to be abated, contained, removed or disposed according to applicable health and other codes before the buildings, 1, could be used or occupied; 2, could be rehabilitated; 3, could be demolished.
Compared to the evidence contained in the offer of proof, the Court can hardly place much reliance on Hurd's testimony. As noted in the plaintiff's (defendant-appellant's) post trial brief, there was no testimony in this case that remediation was required by any public or private authority and further, there was no evidence of any kind that in almost two years after the date of taking and demolition of the property that the Commissioner had undertaken any remediation or had any plans to do so in the future. In its inspection of the property along Bostwick Avenue, the Court had an opportunity to inspect the Tuck-It-Away property and there was no indication that there was any evidence of any remediation activities of any sort on the vacant lot where Tuck-It-Away use to be.
The second issue that should be noted involves the claim that the billboards on top of the subject property added value to such property. The Court cannot entertain such a claim, 1, because there have been no comparable property sales introduced with billboard advertising on the top thereof and 2, because the Court has already indicated that it frowns on the capitalization of income approach in this case because of no actual evidence of income and expenses.
The Court finds that the fair market value of this property on the date CT Page 12585 of taking was $550,000.00. The deposit of $359,000 was withdrawn May 18, 2000. Judgment may enter in favor of the plaintiff in the amount of $191,000 with interest at the statutory rate from May 18, 2000 to the date of payment.
BELINKIE, J.T.R.